# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| JESSICA M. ANDERSON,<br><br>    Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | No. 16-CV-03105-CJW<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

The plaintiff, Jessica M. Anderson (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying claimant's application for supplemental security income, under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. For the reasons that follow, the Court affirms the Commissioner's decision.

## II. BACKGROUND

For this background, the Court relied on the administrative record (AR) and the Joint Stipulation of Facts (Doc. 12). Claimant was born in 1978 and she was 36 years old at the time of the 2015 hearing. (AR 33, 43, 39). Claimant has no past relevant work, although she has episodically and inconsistently worked for short periods of time. (AR 42, 45-47, 72, 91).

Claimant filed her application on July 8, 2013, with an alleged onset date of August 31, 2000, but amended the alleged onset date to May 23, 2012, at the hearing. (AR 25, 62, 329). Claimant alleged she was disabled due to bipolar disorder, manic depression, anxiety, attention deficit disorder, multiple personalities, and short-term memory loss. (AR 425). In 2013, the Commissioner denied claimant's application on initial consideration and again upon reconsideration. (AR 25, 111-34). On June 1, 2015, Administrative Law Judge (ALJ) Cynthia K. Hale held a hearing on claimant's case. (AR 39-69). On November 4, 2015, the ALJ found claimant was not disabled. (AR 25-34). On August 26, 2016, the Appeals Council denied review. (AR 1-6). The ALJ's decision thus became the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Claimant filed a complaint (Doc. 1) with this Court on October 11, 2016, seeking review of the ALJ's decision. On December 13, 2016, with the consent of the parties, the Honorable Linda R. Reade, Chief United States District Court Judge, transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. (Doc. 11). Claimant filed her brief on March 1, 2017, (Doc. 13) and on April 11, 2017, the Commissioner filed her brief (Doc. 14). On April 24, 2017, this case was deemed fully briefed and ready for decision.

### III.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to his physical or mental impairments, he "is not

only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to perform basic work activities. *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-

workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 416.921.

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant can still do his past relevant work, then he is considered not disabled. Past relevant work is any work the claimant performed within the past fifteen years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work

experience. The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. §423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability, and the claimant is not disabled.

### IV. THE ALJ'S FINDINGS

The ALJ made the following findings at each step.

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since July 8, 2013. (AR 27).

At Step Two, the ALJ found that claimant had the following severe impairments: bipolar disorder, posttraumatic stress disorder, and substance abuse disorder in remission. (*Id.*).

At Step Three, the ALJ found that claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 27-29).

At Step Four, the ALJ found that claimant had "the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> The claimant would be limited to simple, routine, and repetitive work tasks. She should be limited to an environment that demanded little use of judgment and few changes in workplace procedures. She would be unable to do fast-paced work. She would be unable to work with members of the public or with public customer demands. She would be limited to only occasional interaction with co-workers and supervisors.

(AR 29). The ALJ also determined that claimant could not perform past relevant work. (AR 32-33).

Finally, at Step Five, the ALJ concluded that given claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could perform. (AR 33-34). Relying on the testimony of a vocational expert, the ALJ found claimant could perform the following jobs: Laundry worker, Folder, and Marker. (*Id*.).

## V. *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits

without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline*, 939 F.2d at 564).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely

because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (citation omitted) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## VI. DISCUSSION

Claimant alleges the ALJ erred in three ways:

1. The ALJ's residual functional capacity assessment is not supported by substantial evidence based on the record as a whole. (Doc. 13, at 1-5);

2. The ALJ submitted an inaccurate hypothetical to the vocational expert and the vocational expert testimony in this case does not constitute substantial evidence upon which the ALJ can rely. (Doc. 13, at 5-7); and

3. The ALJ committed reversible error while evaluating claimant's credibility. (Doc. 13, at 7-8).

The Court will address each of these argument in turn.

### *A. Whether Substantial Evidence Supported the ALJ's Decision*

Claimant argues that substantial evidence did not support the ALJ's decision because she did not afford claimant's treating physician Dr. San Lee's opinion controlling weight. (Doc. 13, at 1-5). Dr. Lee was claimant's treating psychiatrist and had been treating her since 2007. (AR 734). Dr. Lee opined that claimant's symptoms of excessive worries, irritability, fear of others, anxiety, and insecurities would limit her day-to-day activities and claimant's social anxiety would cause her to miss work more than three times per month. (AR 31). Dr. Lee also opined that claimant had marked difficulties in social functioning and in concentration, persistence and pace. (*Id.*). Dr. Lee opined that claimant had no ability to maintain attention for two hours or maintain regular attendance and be punctual. (AR 866). Dr. Lee also opined that claimant could not work in close proximity to others, but had a fair

8

ability to get along with co-workers and peers, respond appropriately to changes in work routine, and deal with normal work stress. (AR 866-67). He also opined that claimant could "tolerate criticism or opinions by others for a short period of time, but will have difficulty on a sustained basis." (AR 868). Finally, Dr. Lee opined that claimant had marked limitations in social functioning, but had a fair ability to interact appropriately with the general public, maintain socially appropriate behavior, travel in unfamiliar places, and use public transportation. (AR 869).

Generally, it is for an ALJ to determine the weight to be afforded to the opinions of medical professionals, and "to resolve disagreements among physicians." *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014) (quotation omitted). An ALJ is required to give "controlling weight" to a treating-source's medical opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 416.927(c)(2). *See also Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (holding that an ALJ must give "substantial weight" to a treating physician, but may discount that weight if the opinion is inconsistent with other medical evidence). An ALJ is not, however, required to explicitly discuss every factor in 20 C.F.R. § 416.927. *See Molnar v. Colvin*, No. 4:12-CV-1228-SPM, 2013 WL 3929645, at *2 (E.D. Mo. July 29, 2013) ("[A]lthough the ALJ did not explicitly discuss every factor of 20 C.F.R. § 404.1527(c) [identical to §416.927(c)] in evaluating the opinions of Plaintiff's treating sources, the ALJ was not required to do so.") (unpublished) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 n.3 (8th Cir. 1998) for the proposition "the ALJ need not discuss every piece of evidence submitted, and failure to discuss certain evidence does not mean that it was not considered.").

9

The ALJ afforded Dr. Lee's opinion little weight. (AR 32). The ALJ indicated that Dr. Lee's own medical records were inconsistent with his opinions. (AR 31-32). The ALJ found Dr. Lee's treatment notes reflect mental status examinations "free of adverse mental status signs other than some changes in mood." (AR 31). The ALJ noted that the medical records show claimant "has demonstrated stable, normal mental status findings but for some changes in mood—the most significant of which corresponded to a period of non-compliance with treatment." (AR 32). The ALJ found this demonstrated that "claimant's treatment regimen is successful and would support her ability to engage in substantial gainful activity within the parameters" of the residual functional capacity assessment the ALJ found applicable. (*Id.*).

There is no absolute rule that an ALJ must accept a treating physician's opinion if it conflicts with other medical evidence, including the treating physician's own records. Rather, the ALJ is called upon to examine the entire record, consider all of the medical evidence, and assign weight to the evidence in light of the entire record. An ALJ may give the opinions from non-treating, non-examining sources more weight than a treating source's medical opinion when they are also supported by "better or more thorough medical evidence." *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000) (internal citation omitted). It is, in the end, the ALJ's duty to assess all medical opinions and determine the weight given to these opinions. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'") (quoting *Bentley v. Shalala*, 52 F.3d 784, 785 (8th Cir. 1995)).

Whether the ALJ's decision to afford little weight to Dr. Lee's opinions was within the ALJ's zone of choice, therefore, depends on the degree to which there was other

evidence to support the ALJ's decision. Here, the ALJ reviewed Dr. Lee's opinions at length. (AR 31-32). In assessing the weight to be given Dr. Lee's opinions, the ALJ relied in part on the conclusion that Dr. Lee's treatment notes were inconsistent with the limitations he opined were present. As noted, Dr. Lee repeatedly found claimant's status to be stable and mild, and reflected only mood fluctuations. (AR 792, 823-33, 841, 845, 857). Moreover, claimant's complaints often focused on situational factors, such as lack of income or being anxious to be found disabled. (AR 31, 741, 822-23). When claimant experienced a particular period of more severe symptoms, it was when she was non-complaint with her medications. (AR 32).

The Court finds its own review of Dr. Lee's treatment notes supports the ALJ's conclusions. There was nothing in Dr. Lee's treatment notes suggesting claimant would be unable to work. Indeed, Dr. Lee has never treated claimant during a period when she did work, and his notes do not reflect any discussion about her ability to work or deal with her anxiety in a work setting. *See*, *e.g.*, *Martise*, 641 F.3d at 926 (affirming ALJ's decision to give treating physician's medical source statement less weight when such was unsupported by medical evidence, including his own treatment notes, and consisted of checkmarks); *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."); *Clevenger v. Social Sec. Admin.*, 567 F.3d 971, 975 (8th Cir. 2009) (affirming ALJ's decision not to follow opinion of treating physician that was not corroborated by treatment notes); *Leckenby v. Astrue*, 487 F.3d 626, 632-33 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate need to evaluate record as whole and upholding the ALJ's decision to discount the treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or

supported by any explanation (internal quotations omitted)); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (where treating physician's notes are inconsistent with the whole record, the ALJ may elect to not give controlling weight to the treating source in making the assessment); *Prosch*, 201 F.3d at 1013 (ALJ may discount or even disregard the opinion of a treating physician where a treating physician's clinical treatment notes are inconsistent with the physician's opinion); *Lewis v. Colvin*, 973 F. Supp.2d 985, 1010 (E.D. Mo. 2013) (finding ALJ did not err in discounting weight afforded to treating physician's opinions regarding limitations when her treatment notes never reflected such findings or limitations).

The ALJ also relied on the opinions of state agency psychological consultants, Drs. Aaron Quinn and John Tedesco. (AR 28-32). Those consulting doctors found claimant was not disabled and could work. (AR 115-122; 128-134). An ALJ may consider state agency physicians' opinions and may rely upon them in making her findings. *See* 20 C.F.R. § 416.927(e); *see also Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (holding that it is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment) (quotation omitted). The ALJ properly discussed how the state agency psychological consultants' opinions were consistent with the record as a whole. *See Hacker*, 459 F.3d at 939 (having determined the treating physician's opinion was inconsistent with substantial evidence in the record, the ALJ is clearly authorized to consider the opinions of other physicians). *See also Heino v. Astrue*, 578 F.3d 873, 880 (8th Cir. 2009) (ALJ can properly credit other medical evaluations in the record over that of the treating physician where those assessments are supported by evidence within the record) (citation omitted). The opinions of non-examining state agency consulting physicians normally cannot constitute "substantial evidence" in support of an ALJ's decision when those opinions directly

12

conflict with the opinions of treating or examining sources. *See*, *e.g.*, *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003) ("The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole.") (citing *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999)); *Dixon v. Barnhart*, 324 F.3d 997, 1002-03 (8th Cir. 2003) (holding that "[g]iven the contradicting recommendations in the record and the insufficiently developed record surrounding Dixon's cardiac problems, [the non-examining consulting physician's] opinion does not constitute substantial record evidence that Dixon can perform medium work.") (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). When, however, assessments of state agency medical consultants are consistent with other medical evidence in the record, these assessments can provide substantial evidence supporting the ALJ's RFC assessment. *See Stormo*, 377 F.3d at 807-08. It is the ALJ's duty to weigh the medical evidence, and here that is exactly what the ALJ did in resolving inconsistencies between the opinions of Dr. Lee, the state agency psychological consultants, and the medical record as a whole. *Estes*, 275 F.3d at 725 ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians.") (internal quotation marks and quotation omitted).

Finally, in assessing the weight to afford Dr. Lee's opinions, the ALJ compared the limitations Dr. Lee believed claimant had against claimant's daily activities. (AR 28, 30-32). As described in detail in Section (C) below, the ALJ found claimant's daily activities were inconsistent with the limitations Dr. Lee opined were present. The Court finds support in the record for the ALJ's conclusion, and therefore finds there is support in the record for her to discount Dr. Lee's opinions.

Claimant argues that the ALJ's residual functional capacity assessment was "diametrically opposed to the opinions of [claimant's] treating psychiatrist when she states that '. . . claimant's treatment regimen is successful'" because "Dr. Lee has consistently reported that plaintiff's prognosis is poor." (Doc. 13, at 7). That assertion is inaccurate, and therefore claimant's argument is unpersuasive. In the Mental Residual Functional Capacity Questionnaire Dr. Lee filled out in 2012, he opined that claimant's prognosis was "poor to very poor without treatment" but "fair with treatment." (AR 732). In the 2015 questionnaire, Dr. Lee listed her prognosis as "poor," but did not elaborate regarding the effect of treatment on claimant's prognosis. (AR 864). Dr. Lee did attach a note in response to Question No. 5, which asked for "treatment and response," and that note indicated that "she has improved enough to be functional with her daily routines at present." (AR 865). Accordingly, there is support in Dr. Lee's own records for the ALJ to conclude that claimant responded well to treatment when she took her medications.

Claimant argues that the ALJ did not incorporate in her residual functional capacity assessment "any of the limitations determined by [claimant's] treating psychiatrist, Dr. Lee." (Doc. 13, at 8). That is also inaccurate. Dr. Lee opined that claimant had difficulties in concentration, persistence and pace, such that it would impair her ability to concentrate, work at pace, and complete tasks in a timely manner. (AR 31, 870). The ALJ accounted for this in her residual functional capacity assessment by limiting claimant to simple, routine, and repetitive work tasks and that she would not be able to perform fast-paced work. (AR 29). Dr. Lee opined that claimant had difficulties in social functioning, that "seriously limit, but not preclude[ ]" her from working in close proximity to others, and accept instructions, and respond appropriately to criticism from supervisors. (AR 734-43, 866-67). The ALJ accounted for this in her residual functional capacity assessment by limiting claimant from

working with members of the public or with public customer demands and to only occasional interaction with co-workers and supervisors. (AR 29).

In sum, the Court finds the ALJ did not err in assigning little weight to Dr. Lee's opinions because the ALJ relied on other substantial medical evidence in the record as a whole, including Dr. Lee's own records. The ALJ did not err in finding Dr. Lee's treatment notes were generally inconsistent with the limitations reflected in Dr. Lee's opinions. Ultimately, it is not for this Court to re-weigh the medical evidence or resolve conflicts between medical professionals. So long as the ALJ's analysis is reasonable, this Court cannot reverse the Commissioner's decision. *See Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999) (internal citation omitted) ("We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome."). The Court finds there was substantial evidence in the record as a whole for the ALJ to act within her zone of choice in assigning little weight to Dr. Lee's opinions.

B.  *Whether the ALJ Submitted an Inaccurate Hypothetical Question Such that the ALJ Could Not Rely on the Vocational Expert's Opinion*

Claimant argues the ALJ submitted an inaccurate hypothetical question to the vocational expert because the question did not incorporate all of the limitations that Dr. Lee opined were required. (Doc. 13, at 8-10). Claimant argues the ALJ therefore could not rely on the vocational expert's opinion that there were jobs claimant could work because when those limitations are considered, there were no jobs claimant could work. (Doc. 13, at 9-10).

Claimant's argument here is dependent upon the Court finding the ALJ erred in determining claimant's residual functional capacity assessment. Claimant does not argue

the hypothetical question was erroneous in any other way. Because the Court has found substantial evidence in the record as a whole supported the ALJ's residual functional capacity assessment, the Court finds the hypothetical question based on that assessment was likewise not in error. A hypothetical question must include only the limitations found credible by the ALJ and supported by the medical record. *See*, *e.g.*, *Howe v. Astrue*, 499 F.3d 835, 841–42 (8th Cir. 2007); *Pertuis v. Apfel*, 152 F.3d 1006, 1007 (8th Cir. 1998). Accordingly, the Court finds claimant's argument regarding the hypothetical question posed to the vocational expert to be without merit.

### C. *Whether the ALJ Erred in Her Credibility Determination of Claimant*

Claimant argues the ALJ erred in discounting claimant's credibility. (Doc. 13, at 10-11). Claimant asserts the ALJ found claimant lacked credibility because of her "'history of intermittent work' and lack of substantial earnings" and because claimant's daily activities were "not as limited to the extent one would expect" given Dr. Lee's opinion about claimant's limitations. (Doc. 13, at 10). Claimant argues that her "inability to hold a job or earn substantial monies is well explained by her limited education, intellectual deficiencies and long standing psychological impairments and limitations." (*Id.*). Claimant also argues that claimant's "extremely limited daily activities . . . in no way reflect the capability of performing substantial and gainful employment on a regular and continuing basis." (Doc. 13, at 11).

In evaluating a claimant's credibility, an ALJ must consider the entire record including the medical records, statements by claimant and third parties, and factors such as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322

(8th Cir. 1984). In arriving at a credibility determination, an ALJ is not required to discuss every piece of evidence submitted. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the *Polaski* standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." *Brown v. Astrue*, 4:08-CV-483 CAS, 2009 WL 88049, at *8 (E.D. Mo. Jan. 12, 2009) (quoting *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004)). The ALJ must "specifically demonstrate in his decision that he considered all of the evidence." *Id*. (citing *Masterson*, 363 F.3d at 738; *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991)). In the end, however, "[t]he determination of a claimant's credibility is for the Commissioner, and not the Court, to make." *Id*. (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

Here, the ALJ found claimant's work history detracted from her credibility. (AR 32). The ALJ noted that claimant's work records show "intermittent work" and her "earnings fell well below the level of substantial gainful activity" which the ALJ concluded "suggest the claimant is not motivated to work and the alleged inability to work does not stem from any impairment." (*Id*.). A review of claimant's testimony at the 2015 hearing supports the ALJ's credibility finding in this regard. At the hearing, claimant last worked "[m]aybe 10, 7, 10 years ago" cleaning motel rooms, a job from which she was fired because "[t]hey told me that I was just not doing my job right, that they—what they said was I was all over the place." (AR 45). She was fired from a newspaper where she put sections together because she was "too unorganized." (*Id*.). Claimant could not remember what she did for a temporary agency or why she got fired

from her job stocking shelves at Dollar General. (AR 46). She was fired from a nursing home after being there for two hours because "[i]t didn't work out." (*Id.*). This testimony does not show any indication that claimant was unable to work or was fired because of anxiety, excessive worries, fear of others, insecurities, issues with social functioning, concentration, persistence, pace or punctuality, or because claimant could not work in close proximity to others, or tolerate criticism or opinions by others. Moreover, the Commissioner is correct that the Social Security Administration previously found claimant was not disabled prior to May 23, 2012, and claimant did not request to reopen that finding, so claimant cannot now assert her disabilities kept her from working prior to May 2012. *See Aguiniga v. Colvin*, 833 F.3d 896, 901-01 (8th Cir. 2016) (discussing claim preclusion doctrines in administrative proceedings).

The ALJ also acted within her zone of choice in viewing claimant's daily activities as inconsistent with her claimed limitations. Claimant asserts that her anxiety and mental impairments prevents her from having social contact and engaging in conduct that requires attention and concentration. Yet, claimant performed housework like cleaning, dusting, sweeping, vacuuming, and mopping, attended school conferences for her daughter, prepared meals, sometimes did the grocery shopping and other shopping, and did the laundry. (AR 47-48). The ALJ also noted that the medical records do not reflect claimant having difficulty in social interactions with treatment staff and reflected that she was able to go shopping and attend medical appointments. (AR 28). Finally, the ALJ noted that claimant was fully able to take care of herself, in such matters as "bathing, dressing, personal hygiene, feeding and toileting." (AR 30).

The Court finds the ALJ had a basis in the record, therefore, to conclude that claimant's "capacity to perform these tasks independently is a strong indication that she

remains able to perform the requisite physical and mental tasks that are part of everyday basic work activity." (AR 30). Although Eighth Circuit Court of Appeals decisions provide "mixed signals" regarding how ALJs are to consider a claimant's daily activities in making credibility determinations, the case law still provides that ALJs may consider daily activities in assessing a claimant's credibility. *See*, *e.g.*, *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015) (permitting an ALJ to discount a fibromyalgia plaintiff's credibility in part based upon the claimant's daily activities, including the ability to cook, clean, drive, shop, and take care of personal grooming and hygiene); *Clevenger*, 567 F.3d at 976 (noting the Eighth Circuit Court of Appeals has sent "mixed signals" concerning the importance of daily activities, but finding the daily activities in that case— doing laundry, ironing, washing dishes, driving, changing sheets, preparing meals, attending church, and visiting friends and relatives—supported an ALJ's decision to discredit a plaintiff's assertions of disability).

As a general matter, credibility determinations "are the province of the ALJ, and as long as 'good reasons and substantial evidence' support the ALJ's evaluation of credibility," the Court will defer to her decision. *See Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). Furthermore, an ALJ "may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin*, 826 F.3d at 1086 (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006)). In short, the ALJ conducted a proper analysis of claimant's subjective complaints; it is not this Court's position to re-evaluate and re-weigh the same evidence. The ALJ was in a better position than the court to assess claimant's credibility, *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996), and was not required to accept her subjective complaints. Here, the Court

finds the ALJ reasonably assessed claimant's credibility and the evidence on the record as a whole.

## VII. CONCLUSION

After a thorough review of the entire record, the Court concludes that substantial evidence in the record as a whole supports the ALJ's decision to find claimant was not disabled. Accordingly, the Court **affirms** the decision of the ALJ. Judgment shall be entered in favor of the Commissioner and against claimant.

**IT IS SO ORDERED** this 18th day of May, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa